519 P.2d 124

Charles A. MEECH and Vera N. Meech, his wife, Plaintiffs-Appellees,

v.

Anselmo GALLEGOS and Rosemary Gallegos, his wife, Defendants-Appellants.

No. 9744.

Supreme Court of New Mexico.

Feb. 15, 1974.

Irving E. Moore, Albuquerque, for appellants.

Butler & Colberg, Wycliffe V. Butler, Albuquerque, for appellees.

OPINION

MONTOYA, Justice.

Plaintiffs-appellees, Charles A. Meech and his wife Vera N. Meech (appellees), filed a complaint in the District Court of

Sandoval County on November 6, 1972, alleging basically that: They purchased from the defendants-appellants, Anselmo Gallegos and Rosemary Gallegos, his wife (appellants), certain real property in Sandoval County in October 1970; the appellees had paid a total of $34,000 to the appellants under the contract ($20,000 down payment and two yearly installments of $7,000 each); and because the appellants failed to supply a policy of title insurance within the one-year period required in the purchase contract, appellees were entitled to rescission of the contract and return of the $34,000, together with accrued interest paid under the purchase contract. The appellants answered admitting the contract and failure to deliver a title policy, as well as receipt of $20,000 down payment. The appellants affirmatively pled that the two annual payments made by the appellees, totaling $14,000, had been placed in an escrow account based on a condition precedent not contained in the purchase contract, that a policy of title insurance be issued to the appellees. Appellants asserted a counterclaim for the $14,000, plus interest on the money paid into the escrow account by the appellees and, in the alternative, if the court ruled that appellees were entitled to rescission of the real estate contract, that the appellants are entitled to a reasonable compensation for the use of the property by the appellees in the sum of not less than $50,000.

The appellees filed an answer to the counterclaim denying all material allegations and thereafter filed a motion for summary judgment. An affidavit dated January 2, 1973, was filed by appellants in their response to the motion for summary judgment, to the effect that there were title defects and an encroachment of buildings of six feet on the property of an adjoining landowner, and that a quiet title suit was filed on October 25, 1972, which is still pending. The affidavit further states that appellees have had possession of the premises since the date of sale and have retained all profits therefrom. After hearings on both the summary judgment

motion and the counterclaim, summary judgment was entered by the district court rescinding the contract of purchase and ordering the return of the $20,000 down payment, the return of the installment payments in escrow in the sum of $14,000, and a refund of $360 made for utility deposits. It is from this judgment that appeal is taken.

Appellants contend that it was error for the trial court to enter summary judgment for the appellees on the question of rescission, and also that the trial court erred in denying the counterclaim of the appellants, arguing that factual issues needed to be determined to ascertain the amount of any judgment on the counterclaim.

Under their first point appellants contend:

"There is a genuine issue of fact as to whether the failure of defendants to furnish plaintiffs title insurance within one year of date of execution of the real estate contract was a reasonable delay under the circumstances so as to deny plaintiffs summary judgment on their action for rescission of the contract. It was error for the trial court to enter summary judgment for the plaintiffs."

" * * * . Summary judgment may properly be granted only if the moving party is entitled thereto as a matter of law upon clear and undisputed facts. [Citations omitted.]"

Coe v. City of Albuquerque, 81 N.M. 361, 362, 467 P.2d 27, 28 (1970); Ute Park Summer Homes Ass'n v. Maxwell Land Gr. Co., 77 N.M. 730, 427 P.2d 249 (1967). In an effort to determine the basis for the granting of the summary judgment with respect to rescission of the contract it is necessary here to review the two pertinent provisions of the contract. They provide as follows:

"3. * * *.

"It is understood and agreed that Owners [appellants] are purchasing a policy of title insurance at this time and shall not be required to furnish additional title evidence upon completion

of this contract, the provisions of paragraph 10 hereof notwithstanding. Said policy of title insurance shall be furnished as soon as possible and in any event within one year after date of this instrument.

"* * *

"10. It is understood and agreed upon the completion of all the stipulations and agreements herein contained, said Owner will, at the time of delivery of Warranty Deed, also deliver to said Purchaser, abstract of title or title insurance, showing said real estate to be of good and merchantable title on the date of the delivery of the Warranty Deed. It is further understood and agreed, however, that in the event the said Purchaser should cause any entries to be made upon the County Records which would affect the title to the above-described land and which would put the Owner to an extra expense in having his title abstracted or insured, then the said Purchaser shall pay to said Owner any and all sums of said extra expense."

■ Appellants are quite right in asserting that what is a reasonable time for the vendor to perfect title is a question of fact. Loyd v. Southwest Underwriters, 50 N.M.66, 169 P.2d 238 (1946). However, in Loyd, supra, we stated (50 N.M. at 74, 169 P.2d at 242–243):

"There is ample authority to the effect that the vendor, in the absence of a contrary contractual commitment, may have a reasonable time to perfect title. [Citations omitted.] * * *."

As we view the two contractual provisions quoted above, the appellants had a specified time limit within which to provide a policy of title insurance. In this case, appellants' affidavit indicates there was a title defect which prevented the procurement of the title insurance prior to the expiration of the one-year-time limit set in the contract of the parties. Furthermore, the title defect had not been corrected up to the time of judgment, which was more

than two years since the execution of the contract and, therefore, the title insurance policy could not be procured. This time limit was not met and the trial court was correct in concluding that a material issue of fact did not exist as to whether the delay was reasonable. The trial court, in ordering rescission of the contract, apparently concluded that the appellants' failure to furnish the title policy as required by the contract was a substantial and fundamental breach of the contract. Therefore, rescission was available to appellees. See Montgomery v. Cook, 76 N.M. 199, 413 P.2d 477 (1966). There being no factual issue present concerning whether a rescission was proper, that part of the judgment is affirmed.

■ As to appellants' second contention, that their counterclaim should not have been disposed of by summary judgment because of the existence of genuine issues of material fact inherent in the counterclaim, we must agree. The counterclaim goes to monies owing to the appellants on the annual payments and interest under the contract, as well as compensation for use of the premises, and presents factual issues which must be decided even after granting of the rescission. The basis of this determination is a result of examination of the very nature of rescission. The rule concerning rescission is stated in 17 Am.Jur.2d Contracts, § 512 at 994–996 (1964), as follows:

"The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides, and hence the general rule, which is to be reasonably applied and is subject to certain exceptions, is that a party who wishes to rescind a contract must place the opposite party in statu quo. An attempted restoration of the status quo is an essential part of the rescission of a contract, and in accordance with the general rule requiring restoration, a party cannot rescind and at the same time retain the consideration, or a part of the consideration, received under the con-

tract. One cannot have the benefits of rescission without assuming its burdens. The rule of restoration applies where a party wishes to rescind a contract for fraud or other cause, and applies even though a rescission agreement is silent as to restoration of the status quo. If the defendant has failed altogether to perform an essential part of an entire contract, the plaintiff may restore what he has received, and for the sake of the remedy treat the contract as rescinded. Where a party to a contract exercises the right under its terms to cancel it when it has been partially performed by the other party, he is required to place the other in statu quo—that is, he must not cancel it so as to affect injuriously any rights that have already accrued to the other in its partial execution."

The appellees' complaint in paragraph VII alleging that they are entitled to rescission also alleges "that the parties be put back into the position that they found themselves at the time of the purchase which was 27 October 1970." This allegation was denied by appellants. In paragraph VIII of the complaint appellees alleged "[t]hat the premises which are the subject of the lawsuit, a motel, has been maintained and is in as good or better condition at the present time then [sic] it was at the time of the date of the contract, 27 October 1970." This last allegation was also denied on the grounds that appellants lacked information as to the allegations contained in said paragraph. It is evident from the nature of the allegations that genuine issues of fact were raised which could not properly be disposed of by summary judgment. The determination of those factual matters was necessary to a resolution of the issue of whether the parties were restored to the same position that they were in at the time of the purchase in view of rescission of the contract and the allegations of the counterclaim.

In view of the foregoing, the summary judgment is affirmed as to the rescission of the contract and reversed as to the summary judgment on the counterclaim. The cause is remanded to the trial court to reinstate the same on the trial docket for determination of issues raised by the counterclaim, and for proceedings consistent with the views herein expressed. The costs of this appeal should be divided equally between the parties.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.