# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-060**

**Filing Date: June 28, 2019**

**NO. A-1-CA-36160**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**

**DONALD G. KNIGHT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Certiorari Denied, September 13, 2019, No. S-1-SC-37832. Released for Publication October 29, 2019.

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BOGARDUS, Judge.**

**{1}** Defendant appeals his conviction, following a bench trial, of four counts of sexual exploitation of children (possession), contrary to NMSA 1978, Section 30-6A-3(A) (2007, amended 2016), and ten counts of sexual exploitation of children (manufacture),

contrary to Section 30-6A-3(D).[1] These crimes are commonly referred to as possession and manufacture of child pornography. On appeal, Defendant challenges the sufficiency of the evidence supporting his convictions for both crimes and contends his convictions for multiple counts of each violate double jeopardy. Agreeing with Defendant's double jeopardy argument as it relates to possession, we remand to the district court to vacate three of the four counts of possession. We otherwise affirm.

**BACKGROUND**

**{2}**     Defendant's charges stem from his use of FrostWire, a peer-to-peer, file-sharing network, to access child pornography. At trial, Sergeant Douglas Perham with the Chaves County Sheriff's Department was the only witness to testify. He was qualified as an expert in investigation, retrieval, and forensic evaluation within the area of sexual exploitation of children. Sergeant Perham's testimony established the following.

**{3}**     Peer-to-peer, file-sharing networks allow users to share and download any files that they wish, from music to books to child pornography. In order to access a peer-to-peer network, users have to download a program onto their computer for that network. Once the program is downloaded, a global unique identifier (GUID) is assigned to the computer to which the program is downloaded. Users of file-sharing networks are able to search for files using keywords and can download any of the search results they choose. All downloads are placed into a shared folder created by the program unless the user makes changes to the program's default settings.

**{4}**     On April 28, 2011, Sergeant Perham logged into a law enforcement database that indicated an Internet Protocol (IP) address in Chaves County was sharing files suspected to be child pornography. The suspected files were identified by hash values,[2] which are alphanumeric values assigned to every unique file. Sergeant Perham testified there has not been a forensically documented instance of different files having the same hash value.

**{5}**     Using Shareaza LE, a law enforcement version of the peer-to-peer, file-sharing program Shareaza, Sergeant Perham connected to the IP address identified by the database. Sergeant Perham downloaded one complete file on April 28, 2011. On May 10, 2011, Sergeant Perham was again able to connect to the identified IP address and received an additional three partial downloads of other files. Sergeant Perham reviewed the downloaded files and confirmed they contained child pornography. Pursuant to a search warrant, Sergeant Perham obtained information from the internet service provider associated with the IP address, including a physical address in Roswell, New Mexico, and the name "Donald Knight." A vehicle located at the physical address was also registered to "Donald Knight."

---

[1]All references to Section 30-6A-3 in this opinion are to the 2007 version of the statute.

[2]Witnesses and trial counsel used the terms "SHA-1 value," "SHA value," and "hash value" interchangeably throughout trial. For clarity and consistency, we use "hash value" throughout this opinion.

**{6}** A search of the home at the physical address was conducted pursuant to another search warrant. Defendant was not present at the time of the search, but arrived after being contacted. The southwest bedroom door of the home, which was padlocked, was forced open. Inside the bedroom, Sergeant Perham located a HP Pavilion computer and, using an onsite preview program, was able to locate a video that he previously received as a download.

**{7}** Upon his arrival, Defendant voluntarily spoke with Sergeant Perham. Defendant told Sergeant Perham that his room was the southwest bedroom and that it was padlocked because his adult son would take things from the room. Defendant stated that he was aware of peer-to-peer networks and was familiar with how they work. Defendant admitted to using LimeWire and FrostWire. While he expressed familiarity with known child pornography search terms, Defendant only admitted to searching for adult pornography. Defendant stated that he would occasionally get "pop ups" of child pornography.[3] Defendant admitted to receiving five to ten downloads containing child pornography. Defendant reported that he would delete files containing child pornography when he found them. Defendant denied sharing and was unaware how Sergeant Perham was able to get a download from his computer. However, Defendant also stated that he understood how file sharing worked and that he was not sharing when his computer was off. Defendant admitted to leaving his computer on a lot of the time.

**{8}** In total, the HP Pavilion computer, several other computers, numerous DVDs and CDs,[4] a memory card, and an external hard drive were seized. All of the seized items were taken to the Chaves County Sheriff's Department Internet Crimes Against Children laboratory and subjected to forensic examination. Using Forensic Tool Kit, a forensic examination software program, Sergeant Perham was able to locate child pornography on the HP Pavilion computer, the external hard drive, and twelve of the DVDs. FrostWire, the peer-to-peer, file-sharing network that Defendant admitted to using, was found on the HP Pavilion computer, and the computer's GUID matched the GUID identified by Sergeant Perham's Shareaza LE software when it downloaded the files containing child pornography.

**{9}** After the close of evidence during the bench trial, the State filed an amended criminal information charging Defendant with four counts of possession of child pornography, contrary to Section 30-6A-3(A); four counts of distribution of child pornography, contrary to Section 30-6A-3(B); and eleven counts of manufacturing child pornography, contrary to Section 30-6A-3(D). On Defendant's motion, the district court granted a directed verdict on all four distribution counts and a single manufacturing count. The district court convicted Defendant on all remaining counts.

---

[3]Sergeant Perham testified that, to his knowledge, peer-to-peer networks do not have "pop ups."

[4] The terms "CD" and "DVD" were used interchangeably by the witness, trial counsel, and the district court. Because the record is not clear and in the interest of clarity and consistency, we use DVD to refer to any CD or DVD seized from Defendant's home.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

**A.      Standard of Review**

**{10}** To the extent that Defendant's argument requires us to interpret the statutes criminalizing the possession and manufacture of child pornography, "that presents a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "In discerning legislative intent, we look first to the language used and the plain meaning of that language." *Id.* "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.* "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *Chavez*, 2009-NMSC-035, ¶ 11.

**{11}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**B.      General Criminal Intent Is the Mens Rea for Intentional Possession of Child Pornography and Intentional Manufacture of Child Pornography**

**{12}** As a threshold matter, Defendant asks us to hold that general criminal intent is insufficient to sustain a conviction for possession of child pornography under Section 30-6A-3(A) or manufacture of child pornography under Section 30-6A-3(D). Defendant's argument relies on the analysis found in *State v. Granillo*, 2016-NMCA-094, 384 P.3d 1121. We recently rejected the same argument for a different subsection of this statute in *State v. Franco*, 2019-NMCA-____, ¶ 13, ____ P.3d ____ (No. A-1-CA-35470, June 13, 2019).

**{13}** In that case, as a matter of first impression, we addressed "the intent necessary to sustain a conviction for intentional distribution of child pornography under Section 30-6A-3(B)." *Franco*, 2019-NMCA-____, ¶ 13. Relying on *Granillo*, the defendant urged us to determine that general criminal intent was insufficient to convict under that statute. *Id.* However, we reasoned that *Granillo* was not controlling because Section 30-6A-3(B)

does not contain a tiered mens rea. *Franco*, 2019-NMCA-____, ¶ 16. Therefore, unlike the statute involved in *Granillo*, NMSA 1978, § 30-6-1(D)(1) (2009) (criminalizing intentional child abuse by endangerment), Section 30-6A-3(B) could not be said to "lean[] away from the common law approach." *Franco*, 2019-NMCA-____, ¶ 16 (internal quotation marks and citation omitted). Because Section 30-6A-3(B) "only describes a particular act and does not include an intent to do a further act or achieve a further consequence[,]" we concluded that, under the common law, Section 30-6A-3(B) only required general criminal intent. *Franco*, 2019-NMCA-____, ¶ 16.

**{14}** Like Section 30-6A-3(B), Section 30-6A-3(A) and Section 30-6A-3(D) do not include an intent to do a further act or achieve a further consequence. Rather, they too only describe a particular act. *Compare* § 30-6A-3(B) ("It is unlawful for a person to intentionally distribute any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age."), *with* § 30-6A-3(A) ("It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age."), *and* § 30-6A-3(D) ("It is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age."). Therefore, we see no reason to reach a different conclusion for these crimes. Accordingly, we hold that both Section 30-6A-3(A) and Section 30-6A-3(D) also require only general criminal intent—"purposely do[ing] an act which the law declares to be a crime." UJI 14-141 NMRA.

**{15}** Both Defendant's sufficiency challenges appear to be premised on his argument for a heightened mens rea, which we have rejected. Nevertheless, we address whether the State has proven Defendant acted with general criminal intent beyond a reasonable doubt. "The element of general criminal intent is satisfied if the [s]tate can demonstrate beyond a reasonable doubt that the accused purposely performed the act in question." *State v. Gonzalez*, 2005-NMCA-031, ¶ 23, 137 N.M. 107, 107 P.3d 547 (alterations, internal quotation marks, and citation omitted); *see* UJI 14-141. "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (internal quotation marks and citation omitted).

### C.  Substantial Evidence Supported Defendant's Convictions for Intentional Possession of Child Pornography

**{16}** Defendant argues that there was insufficient evidence of his mens rea and, therefore, insufficient evidence to support his convictions for possession of child

pornography. Viewing the following evidence in the light most favorable to Defendant's convictions, we disagree.

**{17}**   The State presented evidence of the following. Defendant was familiar with known child pornography search terms. When Defendant's home was searched, law enforcement officers found a HP Pavilion computer in his bedroom. On that computer, Sergeant Perham was able to locate videos containing child pornography. Sergeant Perham identified four specific videos that were located on Defendant's HP Pavilion computer in relation to Defendant's charges for possession of child pornography. Sergeant Perham testified as to the file names for all four of the identified videos. Each of the file names identified contained the same child pornography search terms that Defendant expressed familiarity with. From this evidence, the district court could have reasonably concluded that Defendant acted with the requisite intent.

**{18}**   Defendant relies on the following testimony to support his contention there was insufficient evidence presented of his intent. Sergeant Perham testified that it would be possible for an "innocuous" search to receive results containing child pornography and that he was unaware of whether a FrostWire user could preview results before downloading them. Sergeant Perham also testified that Defendant advised that he would delete files containing child pornography when he would find them. However, Defendant concedes that this Court rejected similar arguments in *State v. Adamo*, 2018-NMCA-013, ¶ 19, 409 P.3d 1002 (stating the fact-finder was free to accept or reject the defendant's contentions regarding intentionality including that the downloads were made "unwittingly"), and *State v. Santos*, 2017-NMCA-075, ¶¶ 12-20, 404 P.3d 797 (rejecting the "[d]efendant's contention that deleting the materials shows the intent to get rid of the materials—not an intent to possess the materials" (alteration and internal quotation marks omitted)). However, Defendant argues that under a heightened mens rea those decisions should be no more than persuasive. Because we have rejected Defendant's request to require a heightened mens rea, we see no reason to revisit our decisions in *Adamo* and *Santos* in this case. Accordingly, the district court, as fact-finder, was free to reject Defendant's version of the evidence of his intent. *See Adamo*, 2018-NMCA-013, ¶ 19; *Santos*, 2017-NMCA-075, ¶ 15.

**{19}**   We conclude there is substantial evidence supporting Defendant's convictions for possession of child pornography under Section 30-6A-3(A).

**D.     Substantial Evidence Supported Defendant's Convictions for Intentional Manufacture of Child Pornography**

**{20}**   Defendant argues there is insufficient evidence to support his convictions for manufacture of child pornography. In so arguing, Defendant contends: (1) the State failed to prove that any of the images were copied instead of moved; (2) Sergeant Perham's testimony regarding creation date "was demonstrably inaccurate," so the State failed to prove dates of manufacture; and (3) there was insufficient evidence of his mens rea.

**{21}**     We address Defendant's first two arguments together. In these arguments, Defendant cites a number of websites that contain discussions of technical information including duplication of files, moving files to another location, "burning" a recordable disc, the differences between recordable discs, and creation dates for files and recordable discs. Defendant requests that we take judicial notice of this information, contending that the facts contained in the cited websites "necessarily should and would have affected the fact-finder's evaluation of the evidence." Sergeant Perham's testimony regarding the creation dates went unchallenged by Defendant at trial. *See State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870 ("It is well established that a party may not invite error and then proceed to complain about it on appeal."). Moreover, Defendant did not introduce any of this evidence to the district court during his bench trial, nor did he ask the district court to take judicial notice of the facts he seeks to present for the first time on appeal.

**{22}**     Unlike the district court, this Court is not a fact-finding court. "[W]e do not consider new facts when conducting appellate review." *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 11, 147 N.M. 693, 228 P.3d 477. Rather, "our scope of appellate review is limited to a consideration of those facts disclosed by the record." *Gen. Servs. Corp. v. Bd. of Comm'rs of Bernalillo Cty.*, 1965-NMSC-112, ¶ 6, 75 N.M. 550, 408 P.2d 51, *overruled on other grounds by Gurule*, 2010-NMSC-006, ¶ 17. Accordingly, we decline Defendant's invitation to take judicial notice of facts not presented during trial and therefore reject Defendant's first two arguments regarding the sufficiency of the evidence.

**{23}**     We now turn to Defendant's third sufficiency argument, which pertains to mens rea. The evidence presented at trial established the following. At trial, Sergeant Perham identified ten separate videos to support Defendant's charges for manufacture of child pornography. Sergeant Perham testified that the videos were contained on five different pieces of media: three videos on one DVD; one video on a second DVD; two videos on a third DVD; one video on a fourth DVD; and three videos on an external hard drive. The four DVDs and the external hard drive were all found in Defendant's locked bedroom. Sergeant Perham provided the file names for all ten videos at trial, and all contained the same child pornography search terms that Defendant was familiar with. The district court could have reasonably concluded that Defendant acted with the requisite intent based on this evidence.

**{24}**     Defendant contends that the following testimony means there was insufficient evidence that he acted intentionally. Sergeant Perham testified that the majority of the files contained on the seized items were adult pornography. Sergeant Perham also testified that the files could have been part of a batch transfer that did not require the transferor to view the file names. Defendant does not cite any authority indicating that such testimony requires the fact-finder to conclude that Defendant did not act intentionally, and we see no basis for reaching that conclusion. Rather, Defendant's argument concerning the inferences that could be drawn about his intent was for the

district court, as fact-finder, "to accept or reject in its consideration and weighing of the evidence." *Adamo*, 2018-NMCA-013, ¶ 19.[5]

**{25}** We conclude there is substantial evidence supporting Defendant's convictions for manufacture of child pornography under Section 30-6A-3(D).

## II. Double Jeopardy

### A. Standard of Review

**{26}** We review Defendant's double jeopardy claims de novo. *See State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289 ("A double jeopardy claim is a question of law that we review de novo."). "The constitution protects against both successive prosecutions and multiple punishments for the same offense." *State v. Sena*, 2018-NMCA-037, ¶ 35, 419 P.3d 1240, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36932, May 25, 2018); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises unit-of-prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute." *Bernal*, 2006-NMSC-050, ¶ 7. "For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized." *Id.* ¶ 13.

### B. Defendant's Multiple Convictions for Intentional Possession of Child Pornography Violate Double Jeopardy

**{27}** The district court convicted Defendant of four counts of possession of child pornography contrary to Section 30-6A-3(A). Defendant argues, and the State concedes, that *State v. Olsson*, 2014-NMSC-012, 324 P.3d 1230, requires us to vacate all but one count. While we are not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept the concession because we conclude that it is supported by our precedent. *See Olsson*, 2014-NMSC-012, ¶¶ 45, 47 (holding the defendant could only be convicted of one count of possession of child pornography under Section 30-6A-3(A) because the unit of prosecution was "insurmountably ambiguous"). Therefore, we hold that Defendant's four convictions for possession of child pornography violate double jeopardy and must be reduced to a single conviction. *See Olsson*, 2014-NMSC-012, ¶ 47.

### C. Defendant's Multiple Convictions for Intentional Manufacture of Child Pornography Do Not Violate Double Jeopardy

**{28}** The district court convicted Defendant of ten counts of manufacture of child pornography contrary to Section 30-6A-3(D). Defendant argues that his multiple convictions under this statute violate double jeopardy. In determining legislative intent

---

[5]*Adamo* addressed the intent necessary for possession of child pornography. *Id.* ¶ 12. In this opinion, we have held that general criminal intent is the mens rea for both possession of child pornography and manufacture of child pornography. We therefore conclude that *Adamo*'s reasoning as to intent is also relevant to this inquiry.

regarding the unit of prosecution in any particular case, New Mexico courts employ the following two-part test:

> First, courts look to the plain language of the statute to determine if the Legislature has defined the unit of prosecution. If so, the inquiry is complete and proceeds no further. If the unit of prosecution is not clearly defined in the plain language of the statute, courts usually proceed to analyze whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments. In determining distinctness, the district court reviews six factors that were originally articulated in *Herron*[ *v. State*], 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. As applied to the [Sexual Exploitation of Children] Act, the *Herron* factors are described to be: (1) time between criminal acts, (2) location of the victim during each act, (3) existence of any intervening events, (4) distinctions in the manner of committing the acts, (5) the defendant's intent, and (6) the number of victims. If there is not sufficient distinctness between the acts that are separately charged, the rule of lenity applies. Under the rule of lenity, doubt is resolved in a defendant's favor and against turning a single act into multiple offenses.

*State v. Sena*, 2016-NMCA-062, ¶ 9, 376 P.3d 887 (internal quotation marks and citations omitted).

**{29}** This Court previously applied that test to determine the unit of prosecution under Section 30-6A-3(D). In *State v. Leeson*, the defendant took numerous highly sexually suggestive photographs of his girlfriend's daughters. 2011-NMCA-068, 149 N.M. 823, ¶ 2, 255 P.3d 401. As a result, the defendant was charged with twenty counts of manufacturing child pornography under Section 30-6A-3(D). *Leeson*, 2011-NMCA-068, ¶ 8. Before his trial, the defendant made a motion to merge the manufacturing counts into a single count; at the close of trial, the district court denied the motion. *Id.* ¶¶ 4, 6. On appeal, this Court first looked to the language of the statute criminalizing the manufacture of child pornography, which states "it is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one of more of the participants in that act is a child under eighteen years of age." *Id.* ¶ 15 (quoting § 30-6A-3(D)).

**{30}** The *Leeson* Court noted that the Legislature has provided definitions for some of the terms contained in Section 30-6A-3(D). *Leeson*, 2011-NMCA-068, ¶ 16. "Manufacture" was defined as "the production, processing, copying by any means, printing, packaging or repackaging of any visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more the participants in that act is a child under eighteen years of age." *Id.* (quoting NMSA 1978, § 30-6A-2(D) (2001)). "Obscene" was also defined, Section 30-6A-2(E); additionally, we noted our Supreme Court has concluded that " '[a]ll child pornography, not just hard-core child pornography, is unacceptable and intolerable to New Mexico citizens and, therefore, obscene under the Sexual Exploitation of Children Act.' " *Leeson*, 2011-NMCA-068, ¶

16 (emphasis omitted) (quoting *State v. Myers*, 2009-NMSC-016, ¶ 39, 146 N.M. 128, 207 P.3d 1105). "Visual or print medium" is defined as

> (1)     any film, photograph, negative, slide, computer diskette, videotape, videodisc, or any computer or electronically generated imagery; or
>
> (2)     any book, magazine or other form of publication or photographic reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc, or any computer generated or electronically generated imagery[.]

*Leeson*, 2011-NMCA-068, ¶ 16 (quoting § 30-6A-2(B)).

**{31}**     Based on the language of the statute and the relevant definitions, this Court "conclude[d] that the unit of prosecution for Section 30-6A-3(D) is clear from the face of the statute." *Leeson*, 2011-NMCA-068, ¶ 14. The *Leeson* Court stated that "[a] violation of the statute occurs where a criminal defendant intentionally produces or copies a photograph, electronic image, or video that constitutes child pornography." *Id.* ¶ 17. Accordingly, "each photograph [the d]efendant took of the child victims was a discrete violation of the statute." *Id.* Therefore, "double jeopardy did not require the counts against [the d]efendant to be merged." *Id.*

**{32}**     Defendant asks us to distinguish *Leeson*. He argues that *Leeson* applies only to "the original production of an exploitative image" by photographing an act of sexual abuse of a child and that copying of electronic files is different because it can be accomplished either individually or in batches. We are not persuaded.

**{33}**     This Court has recognized that "[t]he language of Section 30-6A-3(D) for manufacture of child pornography differs from the language for possession and distribution." *Sena*, 2016-NMCA-062, ¶ 16. "Notably, Section 30-6A-3(D) defines manufacture somewhat differently than possession and distribution, and Section 30-6A-2(D) provides a more specific and detailed definition for the word 'manufacture.' " *Sena*, 2016-NMCA-062, ¶ 16. The definition of "manufacture" includes "copying by any means," § 30-6A-2(D), and "visual or print medium" includes films, § 30-6-2(B)(1). This indicates that the unit of prosecution for the charges at issue here is each copy of an electronic video file, no matter whether each such a file is copied individually or whether multiple files are copied in a batch. Therefore, under these facts and circumstances, the reasoning of *Leeson* and *Sena* apply to the statutory language at issue in Defendant's case.[6]

---

[6] Under Section 30-6A-2(D), several different types of acts constitute "manufacturing." Each such act may be combined with one of the types of "visual or print medium," as defined in Section 30-6A-2(B), which can produce a large number of combinations. In *Leeson* and in this case, the statutory language at issue made clear the appropriate unit of prosecution. Perhaps it is time for the Legislature to clarify its intended unit of prosecution for the statutory language not at issue in either case.

**{34}** Accordingly, we hold that Defendant's ten convictions for manufacture of child pornography do not violate double jeopardy. *See Leeson*, 2011-NMCA-068, ¶ 17.

## CONCLUSION

**{35}** We hold that general criminal intent is the mens rea for possession of child pornography under Section 30-6A-3(A) and manufacture of child pornography under Section 30-6A-3(D). We remand to the district court with instructions to vacate three of Defendant's four convictions for possession of child pornography. We affirm Defendant's remaining convictions.

**{36}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**ZACHARY A. IVES, Judge**